UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CITY OF WESTLAKE ET AL** | **CASE NO. 2:22-CV-05910** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REPUBLIC FIRE & CASUALTY INSURANCE CO ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Starr Surplus Lines Insurance Company's Motion to Sever under Fed. R. Civ. P. 21 and to Transfer Under 28 U.S.C. § 1404(a)," (Doc. 19) wherein Defendant Star Surplus Lines Insurance Company ("Starr Surplus") moves to sever and transfer this action to the United States District Court for the Southern District of New York.

Also, before the Court is "Plaintiffs' Motion for Partial Summary Judgment on Choice of Law" (Doc. 29), wherein Plaintiffs, City of Westlake, National Golf Club of Louisiana, Inc., Westlake Volunteer Fire Department, and Westlake Fire Department (collectively referred to as "Westlake"), move this Court to grant its motion and hold that Defendant, Starr Surplus Lines Insurance Company's "choice of law" policy provisions is invalid, its invocation of New York law is barred, and Louisiana law applies to this case.

## INTRODUCTION

On or about August 27, 2020, Hurricane Laura made landfall near Westlake, Louisiana. On October 9, 2020, Hurricane Delta made landfall near Westlake, Louisiana.

During the relevant time period, the Westlake properties[1] were insured by Starr Surplus. Plaintiffs are the insureds to the Westlake properties. Westlake alleges that Starr Surplus failed to make timely and adequate payments.

For purposes of these two motions, Starr Surplus contends that Westlake violated the Policy's forum-selection clause by filing this lawsuit in Louisiana. Starr Surplus moves to transfer the lawsuit to New York, apply New York law, and sever the case between Westlake and Defendant, Republic.[2]

Starr Surplus bases its motion to sever this lawsuit from Defendant Republic Fire and Casualty Insurance Company ("Republic"), also a Westlake property insurer, because Republic insured certain Westlake properties under a separate policy of insurance. In addition, Republic is not a signatory party to Starr Surplus's forum-selection clause. Starr Surplus contends that these Defendants should be severed because the claims against Republic concern a separate insurance contract, insuring different property, but more so to facilitate the transfer of a distinct action against Starr Surplus to the New York federal court.

The Starr Surplus policy contains the following provision:

e. Choice of Law and Choice of Venue:

No suit, action, or proceeding regarding this Policy for the recovery of any claim shall be sustainable in any court of law our equity unless the Insured shall have fully complied with all the requirements of this POLICY. The COMPANY agrees that any suit, action, or proceeding against it for recovery of any claim under this POLICY shall not be barred if commenced within the time prescribed in the statutes of the State of New York, Any suit, action, or

---

[1] Westlake alleges that Starr Surplus's policy insures all immovable properties located in and owned by Westlake, together with all improvements and items of personal/business situated thereon.
[2] Starr Surplus argues that the severance of Republic will better facilitate the transfer of the lawsuit to New York.

> proceeding against the COMPANY must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York. The laws of the State of New York shall solely and exclusively be used and applied in any such suit, action, or proceeding, without regard to choice of law or conflict of law principles.[3]
>
> . . .
>
> g. Conflict of Wording:
>
> If there is conflict between the specific sections or endorsements and general conditions in this POLICY, the conditions of the specific sections or endorsements shall prevail.[4]

Conversely, Westlake contends that (1) the Starr Surplus policy's forum-selection clause is invalid as against public policy, (2) and Louisiana's law expressly prohibits the use of another state's law.

## LAW AND ANALYSIS

These motions are intertwined and will be addressed together. While Starr Surplus argues that Westlake violated the forum-selection clause by filing this lawsuit in Louisiana as opposed to New York and that New York law should apply, Westlake argues that the forum-selection and choice of law clause are invalid.

Starr Surplus relies on *In re Mt. Hawley Ins. Co.*, 2022 U.S. App. LEXIS 28212 (5th Cir. Apr. 28, 2022), wherein the Fifth Circuit Court of Appeal ruled that an insurance policy's forum-selection clause is enforceable and requires transfer to the contractually chosen forum. *Id. Mt. Hawley* also involved a commercial insurance claim by a Louisiana insured alleging breach of contract and bad faith under Louisiana Revised Statutes 22:1892

---

[3] Defendant's exhibit A, att. To Exhibit 1, Declaration of Leah Engelhardt, p.6.
[4] *Id.* p. 25.

and 22:1973 for property damage caused by Hurricanes Laura and Delta. The Fifth Circuit ordered this Court to transfer the *Mt. Hawley* lawsuit to New York based on the insurance policy's forum-selection clause. Starr Surplus also cites several other cases for the same proposition: *Krishana Inc. v. MT Hawley Ins. Co.*, 2022 U.S. Dist. LEXIS 15975, *3 (W.D. La. Jan. 27, 2022), vacated and ordered transferred pursuant to writ of mandamus, *Ram Krishana Inc. v. MT Hawley Ins. Co.*, 2022 U.S. Dist. LEXIS 187766 (W.D. La. Apr. 29, 2022). See also, *Brooks & Brooks Invs. LLC v. Mt. Hawley Ins. Co.*, 2022 U.S. Dist. LEXIS 219247, *4-6 (E.D. La. Dec. 2, 2022); *Burk Holding Co. v Mt. Hawley Ins. Co.*, 2023 U.S. Dist. LEXIS 6398, *9-14 (E.D. La. Jan. 13, 2023) (same); *William B. Coleman Co. v. Mt. Hawley Ins. Co.*, 2022 U.S. Dist. LEXIS 126413, *6-9 (E.D. La. July 18, 2022).

Starr Surplus reminds this Court that it followed the U.S. Fifth Circuit's mandate in *In re MT. Hawley Ins. Co.* and transferred an insurance-claim case—which alleged property damage from Hurricanes Laura and Delta and claimed violations of La. R.S. 22:1892 and 1973—to the Southern District of New York, according to a similar forum-selection provision in a surplus lines policy. Of significance, the Court notes that the *Mt. Hawley* suit did not involve a Louisiana public body/political subdivision.

So, what makes this case any different, if anything? Louisiana law and its strong public policy against forum selection clauses, particularly in a contract involving a public body/political subdivision.

*Endorsement 27*

Star Surplus argues that Westlake violated the policy because it filed suit in this Court as opposed to a court in New York. Star Surplus maintains that the policy's Choice

of Law and Choice of Venue is mandatory and moves to transfer this lawsuit to New York. Westlake asserts that Endorsement 27 (sometimes referred to as a "Service of Suit Endorsement") modifies the policy and has a purpose.[5] Endorsement 27 provides as follows:

> In the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States . . . and that in any suit instituted against the Insurer upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.
> . . .
> Nothing herein shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.[6]

Westlake contends that Endorsement 27 is a permissive forum selection clause that controls and overrides the forum selection clause in the policy's general conditions. The Court agrees that Endorsement is a permissive forum selection clause. See *Waste*

---

[5] That clause states that Starr "will submit to the jurisdiction of a court of competent jurisdiction within the United States" but also provides that "[n]othing in this condition constitutes or should be understood to constitute a waiver of the Insurer's right . . . to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States." Doc. 10, att. 3, p. 7. The court does not reach that argument here but observes that other district courts have indicated that similar clauses override a mandatory forum selection clause even in the presence of this reservation language. *See Emerald Holdings, Inc. v. W.R. Berkley Syndicate Ltd.*, 2021 WL 6752004 (C.D. Cal. May 26, 2021) (finding that Service of Suit clause, which also stated that insurer would "abide by the final decision" of court, permitted plaintiff to choose its own forum); *see also H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, 2015 WL 4608118 (W.D. Penn. July 31, 2015) (stating in dicta that "[t]he plain language of the [endorsement] sets forth that Starr will consent to the jurisdiction of any Court chosen by Heinz").

[6] Defendant's exhibit A, att. To Exhibit 1, p. 76.

*Management of Louisiana, L.L.C. v. Jefferson Parish ex rel. Jefferson Parish Council*, 594 Fed. App'x. 820, 821 (5th Cir. 2014). *City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 15 (5th Cir. 1991). The Fifth Circuit further reaffirmed that a similar "Service of Suit clause gives the insured the right to choose which forum will hear [the insured's] action." *International Ins. Co. v. McDermott, Inc.*, 956 F.2d 93, 96 (5th Cir. 1992).

Westlake chose to file suit in Louisiana and had every contractual right to do so under Endorsement 27. The Court finds that Westlake has not violated the policy because it filed suit in this Court.

*Louisiana Public Policy*

Westlake is a political subdivision under Louisiana Constitutional Article VI, § 44. Louisiana Revised Statute § 9:2778 declares null and void forum selection clauses providing for venue or jurisdiction outside of Louisiana in contract with public bodies. Louisiana Revised Statute § 9:2778 states the following:

> ***A.*** The legislature finds that with respect to public contract involving the state or ***a political subdivision of the state***, ***provisions in such agreements*** requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction ***are inequitable and against the public policy of this state.***
> B. The legislature hereby declares null, void, unenforceable, and against public policy, any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:
> (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state.
> (2) Requires interpretation of the agreement according to the laws of another jurisdiction.
> C. The provisions of this Section shall apply to public contracts, as described in this Section, entered into on or after June 30, 1992.

*Id.* (emphasis added)

In determining the enforceability of the forum selection clause, the Louisiana statute declares that clauses in "public contracts involving the state or a political subdivision of the state" and requiring resolution of disputes thereunder outside of the state or under the laws of a different state are "null, void, unenforceable, and against public policy[.]" La. Rev. Stat. § 9:2778.

Starr Surplus contends that this statute does not mention or concern insurance policies, and notes that the legislature addresses insurance in a separate title of the Revised Statutes, Title 22, the Louisiana Insurance Code.

Instead, Starr Surplus relies on Louisiana Revised Statute § 22:868(A) of the Insurance Code, wherein the legislature prohibits forum-selection clauses in insurance policies delivered in Louisiana and covering subjects located in the state. Louisiana Revised Statute § 22:868(D) provides that "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." Thus, Starr Surplus suggests that because surplus-lines insurers are not required to file or seek the Commissioner of Insurance's approval of their forms for property and casualty insurance, the legislature allows surplus-lines policies to include forum-selection clauses. Louisiana Revised Statute § 22:446(A).

The Supreme Court instructs in *Atlantic Marine* that "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atlantic*

*Marine Constr. Co., Inc. v. U.S. Dist. Court for West. Dist. of Tex.*, 571 U.S. 49, 64–65 (2013). *Atlantic Marine*, however, "presupposes a contractually valid forum-selection clause." 571 U.S. at 581 n. 5; see also *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014) ("When the parties hold a valid forum selection clause, *Atlantic Marine* alters the normal section 1404 analysis.")

Federal law governs the enforceability of forum selection clauses. *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). Such clauses are considered prima facie valid and enforceable unless they are shown to be unreasonable. *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013). In the Fifth Circuit the court considers several grounds for "fundamental unfairness," including whether "enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth v. The Corporation*, 121 F.3d 956, 965 (5th Cir. 1997). Likewise, the Supreme Court has held that the forum state's rejection of forum selection clauses should be considered by the district court in balancing factors under 28 U.S.C. § 1404(a). *Barnett v. DynCorp, Internat'l, LLC*, 831 F.3d 296, 302–03 (5th Cir. 2016) (citing *Stewart Org., Inc. v. RICOH Corp.*, 487 U.S. 22, 30–31 (1988)). Accordingly, Louisiana law can and should be considered to review Westlake's challenge to enforceability at least as far as determining the forum state's public policy.

Starr Surplus moves for enforcement of its forum selection clause and transfer to the Southern District of New York under 28 U.S.C. § 1404(a). The Supreme Court in *Atlantic Marine* held that valid forum selection clauses must be enforced under § 1404(a) "in all but exceptional circumstances" unrelated to the convenience of the parties. 571 U.S.

at 59. Accordingly, a court faced with such a motion under a valid and mandatory forum selection clause may only consider public interest factors relating to the transfer. *Id*. at 63. The Fifth Circuit's consideration in *Haynsworth*, supra, that a forum selection clause would not be enforced when it contravened "a strong public policy of the forum state" is thus unaltered by the Supreme Court's subsequent holding in *Atlantic Marine*. See, e.g., *Barnett*, 831 F.3d at 301–02; *Hotel Mgmt. of New Orleans LLC v. General Star Indem. Co.*, 603 F.Supp.3d 356, 362–63 (E.D. La. 2022); *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F.Supp.3d 394, 417–423 (E.D. Tex. Mar. 30, 2021). Under *Haynsworth*, the party resisting enforcement of a mandatory forum selection clause "bears a heavy burden of proof." 121 F.3d at 963 (internal quotations omitted).

Westlake argues that even if Endorsement 27 didn't explicitly supersede Starr Surplus's forum selection clause, it would then be a contractual provision that purports to deprive Louisiana courts of venue and jurisdiction in a public contract with a political subdivision of the state. See La. Atty. Gen. Op. No. 96-127 (Mar. 26, 1996), 1996 WL 210828, p. 7 (stating that La. R.S. § 9:2778 prohibits foreign arbitration clause in lease contract between industrial property developer and the South Louisiana Port Commission—a political subdivision under La. R.S. § 34:2471); La. Atty. Gen. Op. No. 03-46 (Jan. 30, 2003), 2003 WL 295602, p. 1 (finding that La. R.S. § 9:2778 prohibits clause requiring arbitration outside Louisiana in multi-party contracts between Louisiana Film and Video Commission and taxpayers in conjunction with contracts used in certification and entitlement to motion picture investor tax credit).

Westlake also relies on Louisiana Civil Code articles 7 and 2030, which render any contractual provision in violation of public policy absolutely null. *Quaternary Resource Investigations, LLC v. Phillips*, 316 So.3d 448, 459 (La. App. 4 Cir. 11/19/20), *writ denied*, 311 So.3d 1059 (La. 03/02/21). Statutes enacted for public policy purposes are to be liberally construed in favor of their objective, and any exception to their application must be interpreted strictly. *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La. 05/18/87) (UM statutes enacted for public purpose of "providing reparation for those injured through no fault of their own" must be liberally construed and exceptions to statutes are interpreted strictly); *In re Brown*, 189 B.R. 653, 660-61 (Bkrtcy. M.D. La. 1995) (Louisiana statutes providing immunity from bankruptcy seizures are subject to liberal construction consistent with the purpose of the statute); *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 06/29/01) (non-competition agreements violate public policy and "must be strictly construed against the party seeking their enforcement"); *Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins. Co.*, 693 So. 876, 882 (La. App. 3 Cir. 04/30/97) (strong public policy behind Valued Policy law requires statute "to be interpreted liberally in favor of the insured."). An insurer cannot "impose conditions upon its obligations that conflict with statutory law or public policy." *Marcus v. Hanover Ins. Co., Inc.*, 740 So.2d 603, 606 (La. 06/04/99) (citing *Block v. Reliance Ins. Co.*, 433 So.2d 1040, 1044 (La. 05/23/83)).

Starr Surplus maintains that § 9:2778's reference to "public contracts" excludes insurance policies. To this end it notes similar phraseology in "other statutes prohibiting forum-selection clauses in generic public contracts of various kinds" as well as the legislature's regulation of insurance policies under the Insurance Code, Title 22, and the

fact that surplus lines policies like this one are specifically exempt from Title 22's prohibition on forum selection clauses. See La. Rev. Stat. § 22:868(D).

Section 9:2778 was enacted in 1992 but has only been applied a few times. See La. Atty. Gen. Op. No. 96-127 (La. A.G.), 1996 WL 210828 (Mar. 26, 1996) (invalidating arbitration clause in lease with port commission); La. Atty. Gen. Op. No. 03-0046 (La. A.G.), 2003 WL 295602 (Jan. 30, 2003) (upholding arbitration clause in film production contract involving Department of Economic Development, because it did not require the arbitration to take place outside of Louisiana). The fact that other Louisiana statutes also prohibit forum selection clauses in more specific types of public contracts does not mandate a narrower reading of § 9:2778. Instead, the applications to date suggest a broad construction of the term "public contract." The only question, then, is whether the separate regulation of insurance policies under Title 22 means they are exempted from the legislature's expression of concern under § 9:2778.

Louisiana Revised Statute 22:868(A)(2) broadly invalidates clauses "[d]epriving the courts of this state of the jurisdiction or venue of action against the insurer." Under subsection (D), however, subsection (A)'s provisions "shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." La. Rev. Stat § 22:868(D). Accordingly, § 22:868 does not evince a "strong public policy" against forum selection clauses in surplus lines policies. *Hotel Mgmt. of New Orleans, LLC*, 603 F.Supp.3d at 362–63.

The fact that § 22:868 does not reflect such a policy, however, does not mean that it does not exist. And if § 9:2778 does apply to insurance contracts, then it seems a strong

expression of Louisiana public policy in that area. The court thus begins with the language of § 9:2778 itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *Benjamin v. Zeichner*, 113 So.3d 197, 202 (La. 2013). When the text is unambiguous, the court must read words and phrases in context and construe them according to their common and approved usage. *ABL Mgmt, Inc. v. Bd. of Sup'rs of Southern Univ.*, 773 So.2d 131, 135 (La. 2000). At the same time, "[t]he Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject." Id.

Starr Surplus emphasizes the phrase "public contracts" within § 9:2778, suggesting that it narrows the statute's application. The court can find no body of state law interpreting this phrase. While it is used more frequently in a construction context, the limited application of the statute to date has included leases and film production contracts. The policy at issue was purchased with public money and covers public property; there is thus every basis for considering it a "public contract."  Additionally, the statute falls under the title regulating contracts as a whole. It was enacted decades after the original version of § 22:868, which was passed in 1948 to "reverse-preempt" federal law mandating arbitration. See *Creekstone Juban I, LLC v. XL Ins. America, Inc.*, 282 So.3d 1042, 1052 (La. 2019) (WEIMER, J., concurring). The exemption for surplus lines policies, however, did not come until amendments passed in 2020. 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (WEST). The two statutes offered concurrent protection against forum selection clauses and were not even in conflict until the exemption offered under the amendment.

The legislature failed to cross-refence § 9:2778 when it enacted § 22:868(D). But it also gave no indication that § 868(D) supersedes all other statutes on the subject. It is well settled that insurance policies are contracts under Louisiana law. *E.g., Huggins v. Gerry Lane Enterprises, Inc.*, 957 So.2d 127, 129 (La. 2007). The two laws are only in potential conflict as to surplus lines policies issued to state entities, a narrow segment of the contracts governed by each respective statute. As the statutes cited by Starr Surplus itself show, the Louisiana legislature has no qualms about potentially overlapping provisions concerning forum selection clauses. See also La. Rev. Stat. § 23:921(A) (limiting forum selection clause and choice of law clauses in "every employment contract or agreement"); La. Rev. Stat. § 51:1407(A) (limiting application of venue selection clauses Louisiana Unfair Trade Practices Act suits). Accordingly, the presence of concurrent regulations governing this insurance policy does not invalidate § 9:2778's application.

Forum selection clauses "are generally enforceable and are not per se violative of public policy in Louisiana." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc., of La.*, 148 So.3d 871, 878 (La. 2014). But when a Louisiana statute expressly prohibits such a clause, the court has acknowledged the statute as an "expression of strong Louisiana public policy" for that limited application. See *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 603 (La. 2001); see also *Shelter Mut. Ins. Co.*, 148 So.3d at 881 (citing La. Rev. Stat. § 23:921(A), among others, as examples of the legislature declaring forum selection clauses "unenforceable and against public policy in very limited circumstances"). Section 23:921(A), the most frequently applied of these exceptions under Louisiana caselaw, even lacks the full statement of legislative findings contained at § 9:2778(A). The statute under

its plain terms or even through the interpretation of any ambiguity indicates the state's strong public policy against both forum selection clauses and choice of law clauses in the policy at issue, requiring a political subdivision of the state to litigate its insurance claim in New York and under New York law. This is clearly a valid area of state concern; it does not relate to private actors and their right to contract but to clauses in public contracts that would potentially subject a state actor to litigation under the laws of another state in an out-of-state forum. Accordingly, it is unenforceable under *Haynsworth*. There is likewise no basis for voluntary transfer under 28 U.S.C. § 1404(a), because neither the convenience of the parties and witnesses nor the interest of justice would counsel transferring this suit to New York.

Louisiana Revised Statute § 9:2778 applies to Westlake as a political subdivision of the state under Louisiana Constitution Article VI, § 44. That statute invalidates forum selection and choice of law clauses in public contracts with state entities.

## CONCLUSION

For the reasons set forth above, Starr Surplus Lines Insurance Company's Motion to Sever under Fed. R. Civ. P. 21 and to Transfer Under 28 U.S.C. § 1404(a) (Doc. 19) will be **DENIED**, insofar as Louisiana law is considered in determining the applicable public policy interests. The Plaintiffs' Motion for Partial Summary Judgment on Choice of Law (Doc. 29) will be **GRANTED,** insofar as the Court finds that Starr Surplus Lines Insurance Company's "choice of law" policy provisions is invalid, its invocation of New York law is barred, and Louisiana law applies to this case.

The Case will thus proceed through the Case Management Order (Doc. 2) for first-party insurance claims arising from Hurricanes Laura and Delta.

**THUS DONE AND SIGNED** in Chambers on the 27th day of March, 2023.

　　　　　　　　　　_____
　　　　　　　　　　　　　JAMES D. CAIN, JR.
　　　　　　　　　UNITED STATES DISTRICT JUDGE